IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BROCHERS ISOM, (Y26352), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 22-cv-5269 |
| v. | ) | |
| | ) | Judge Jeffrey I. Cummings |
| | ) | |
| JEFFREY WEHKING, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 28, 2023, petitioner Brochers Isom ("Isom" or "petitioner"), an inmate at the

Centralia Correctional Center, brought this *pro se* habeas corpus action, (Dckt. #10), pursuant to

28 U.S.C. §2254, to challenge his August 23, 2017 conviction of attempted first-degree murder,

aggravated domestic battery, and domestic battery in the Circuit Court of Cook County.[1]   Before

this Court, petitioner brings two claims: (1) that petitioner's attempted murder conviction

violates Illinois' one-act, one-crime doctrine; and (2) that the State violated *Brady v. Maryland*,

373 U.S. 83 (1963), by withholding certain evidence.

For the reasons set forth below, the Court denies the petition and declines to issue a

certificate of appealability.

**I.     BACKGROUND**

The Court draws the following factual history from the state appellate court opinions,

*People v. Isom*, 2019 ILApp (1st) 180376-U (Ill.App.Ct. Dec. 4, 2019) (replicated at Dckt. #16-

1); *People v. Isom*, No. 1-20-0926 (Ill.App.Ct. Dec. 22, 2021) (replicated at Dckt. #16-6).   State

---

[1]  This Court has jurisdiction over petitioner's 28 U.S.C. §2254 petition for a writ of habeas corpus
pursuant to 28 U.S.C. §§1331, 2241, and 2254.   Pursuant to Federal Rule of Civil Procedure 25(d), the
Clerk's Office is ordered to substitute Warden Jeffrey Wehking as the respondent in this matter.   *See*
*Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996).

court factual findings, including facts set forth in a state court appellate opinion, have a presumption of correctness, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C §2254(e)(1); *Tharpe v. Sellers*, 583 U.S. 33, 34 (2018) ("[The state court's] factual determination is binding on federal courts . . . in the absence of clear and convincing evidence to the contrary."); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018). The Court draws additional procedural history from the state court record, (Dckt. #16, *et seq.*).

> ### A. Trial

At a bench trial on August 23, 2017, Isom was found guilty of attempt first degree murder, aggravated domestic battery, and domestic battery, arising from an incident in Riverdale, Illinois during which Isom choked and attacked his then-girlfriend Terri Young. (Dckt. #16-1 ¶11).

According to Young's testimony at trial, on May 2, 2015, she and Isom were in his living room when Isom demanded her cell phone, dragged her to the kitchen, and threw her into a garbage can. (Dckt. #16-1 ¶7). Isom then dragged her back to the living room, climbed on top of her, hit her head and face, and said "B***, Imma kill you." (*Id.*). He choked her until she could not breathe and pressed his thumbs into her eyes, until she felt one of her eyes "dangling" from her head by the time he got off. (*Id.* ¶¶7–8). She crawled to a neighbor's porch, heard sirens, and next remembered waking up in a hospital. (*Id.* ¶8). Local police testified at trial that Young was "slipping 'in and out of consciousness' and screaming" when they found her, unable to breathe, her left eye protruding and her right eye swollen shut. (*Id.* ¶9).

Isom testified that on May 2, 2015, Young and a man visited Isom's house, where Young had lived until Isom made her leave because she used cocaine. (*Id.* ¶10). When Young asked

Isom for money to repay a debt she owed the man, and Isom refused, Young hit him in the back of the head with a frying pan. (Dckt. #16-3 at 17). Isom testified that he grabbed her, pushed her away, ran to a park, and did not return to his house that day. (*Id.* at 17–18). At closing argument, Isom stated, "I wanted a trial . . . to prove that I did not try to hurt that girl intentionally. It was in self-defense." (*Id.* at 26).

Before trial, Isom was represented and pleaded not guilty through pretrial counsel. (Dckt. #16-1 ¶4). Discovery proceeded. At a final pretrial hearing on November 29, 2016, pretrial counsel sought a continuance for receipt of materials she had subpoenaed from Cermak Health Services of Cook County. (*Id.*). A bench trial was scheduled for May 2017, but on May 1, 2017, Isom requested a jury trial, which was then set for July 17, 2017. (*Id.* ¶5). On June 7, Isom demanded a "speedy jury trial" and asked to proceed *pro se*. (*Id.* ¶6). Following admonishments, the court accepted Isom's waiver of counsel. (*Id.*). Isom later requested and received a bench trial. (*Id.*).

On June 27, 2017, the prosecutor tendered all previously tendered discovery to Isom, with some redacted portions. (Dckt. #16-2 at 2). On July 17, however, Isom notified the Court that he had not received all discovery from the prosecutor. (*Id.* at 5). In particular, he noted that he was missing: (1) Young's police report, (2) the ambulance report, (3) Isom's report and processing records from Cermak, and (4) a picture of Young's eye. (*Id.*). The prosecutor responded that she had tendered a five-page emergency medical service (EMS) report from Young, the one photo she had of Young, and five pages of police reports; that she did not have "any information . . . involving the defendant"; and that there were "no other photos" besides what she had tendered. (*Id.* at 5–6). She also noted that "any information . . . involving the defendant . . . he could certainly obtain" himself. (*Id.* at 6).

3

The case proceeded to trial on August 22, 2017, and the trial court found Isom guilty of attempt first degree murder, aggravated domestic battery, and domestic battery. (Dckt. #16-1 ¶11). At trial, Isom stated that he chose to proceed *pro se* because his appointed pretrial counsel declined to bring his case to trial, despite him requesting a jury trial "for 21 months." (*Id.* ¶10).

Isom filed a motion for new trial but declined to argue it and, instead, requested counsel. (*Id.*). The court reappointed pretrial counsel, who argued in relevant part on December 4, 2017, that Isom did not receive complete discovery because he was missing certain medical records. (Dckt. #16-4 at 3). The prosecutor responded that she had tendered "377 pages of the victim's medical records," constituting "all the evidence that The State had in its possession." (*Id.* at 4). She noted that Isom had indicated he wanted his own medical records, "but as he was representing himself, and The State did not have the possession of the medical records belonging to the defendant" or "a picture of the victim with her right eye open," he would have needed to subpoena those records for himself. (*Id.* at 5).

The Court denied Isom's motion for a new trial, and Isom was sentenced to concurrent prison terms of eighteen years for attempt first degree murder and seven years for aggravated domestic battery. (*Id.* at 12).

**B.** **Direct Appeal**

On direct appeal, Isom raised claims unrelated to the instant habeas petition, contending that the trial court conducted an improper hearing by ruling on the merits of his *pro se* ineffective assistance of counsel claim rather than deciding whether to appoint new counsel based on pretrial counsel's possible neglect. (Dckt. #16-1 ¶2). After his appeal, Isom did not file a petition for leave to appeal ("PLA") with the Illinois Supreme Court.

4

### C.     Postconviction Petition

On April 21, 2020, Isom filed a *pro se* petition for postconviction relief.   (Dckt. #16-6). He contended, in relevant part, that the State violated his right to due process under *Brady v. Maryland* by withholding his medical records, which he subsequently obtained and attached to the petition, and which would have proven he acted in self-defense.   (*Id.* ¶2).   The trial court dismissed Isom's petition, finding that (1) "[t]here [was] no evidence in the record or in [Isom's] supporting post-conviction affidavits that the prosecution possessed [his] medical records"; (2) that the records he did eventually produce did not establish prejudice; and (3) Isom failed to present the *Brady* issue on direct appeal, and the issue was thus forfeited.   (Dckt. #16-7 at 2–3).

On appeal, appointed appellate counsel moved to withdraw pursuant to *Pennsylvania v. Finely*, 481 U.S. 551 (1987).   Counsel expressly stated in the memorandum supporting his *Finley* motion to withdraw that Isom's *Brady* claim "is expressly rebutted by the record," which showed both that the prosecutor did not possess the documents Isom sought and that the documents did not support a claim of self-defense.   (Dckt. #16-5 at 14–16).   Counsel also found Isom's other claims to be without arguable merit.   (*Id.* at 20).   In response, Isom argued that his trial and appellate attorneys were biased against him, and he argued that he only committed aggravated domestic battery.   (Dckt. #16-6 ¶5).   The appellate court, upon review of counsel's *Finley* motion and memorandum and defendant's responses, agreed with counsel.   (*Id.* ¶6).   On December 22, 2021, the Illinois Appellate Court granted counsel's motion to withdraw and affirmed the judgment of the trial court denying postconviction relief.   (*Id.*).

On February 28, 2022, Isom filed a PLA contending in relevant part that (1) he was overcharged in violation of the Illinois one-act, one-crime doctrine, (Dckt. #16-8 at 6–9); and (2) the State committed a *Brady* violation by withholding his medical records, part of the EMS

report, and various photographs of Young in the hospital, (*id.* at 5–6, 9–11, 13–14).  On May 25, 2022, the Illinois Supreme Court denied Isom's PLA.  (Dckt. #10 at 4).

### D.      Federal Habeas Corpus Petition

On February 28, 2023, Isom timely filed the instant petition.  (*See generally* Dckt. #10).

## II.      ANALYSIS

Isom's *pro se* habeas corpus petition, liberally construed,[2] seeks to bring claims for (1) being overcharged in violation of Illinois's one-act, one-crime doctrine, (Dckt. #10 at 5–7, 12–14); and (2) a violation of *Brady v. Maryland* resulting from the prosecutor's withholding of three distinct pieces of evidence: Isom's medical records, part of the EMS report, and various pictures of Young in the hospital, all of which Isom contends would have shown that he acted in self-defense, (*id.* at 6–7, 33–35, 54–55).  Respondent argues, in its answer, that petitioner's first claim is not cognizable, and that his second claim is procedurally defaulted and otherwise meritless.  (Dckt. #17).  For the following reasons, the Court agrees.

### A. Isom's First Claim Is Not Cognizable.

Isom's first claim alleges that he is being overcharged in violation of Illinois's one-act, one-crime doctrine, which prevents a defendant from being convicted of more than one crime emerging from the commission of a single physical act.  *People v. King*, 363 N.E.2d 838, 845 (Ill. 1977).  A state prisoner may only obtain a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the *United States*."  28 U.S.C. §2254(a) (emphasis added).  In other words, habeas corpus relief is not available on a claim that the petitioner's custody violates *state* law.  The one-act, one-crime doctrine, however, is a rule

---

[2] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (cleaned up).

of construction created by Illinois courts. *See Young v. Varga*, No. 16-cv-3386, 2017 WL 386655, at *4 (N.D.Ill. Jan. 27, 2017); *King v. Cahill-Masching*, 169 F.Supp.2d 849, 854–55 (N.D.Ill. 2001). It is well-settled that an error of state law is not a violation of the federal Due Process Clause. *See Jones v. Thieret*, 846 F.2d 457, 459 (7th Cir. 1988). Thus, because the one-act, one-crime rule is a rule of Illinois state law and not a federal law, a violation of this rule is not cognizable on habeas review. *King*, 169 F.Supp.2d at 855.

Accordingly, because the Court finds that Isom's first claim is not cognizable, this claim is not a basis for habeas corpus relief.

### B. Isom's Second Claim Is Inexcusably Procedurally Defaulted.

Isom's second claim alleges that the State violated *Brady v. Maryland* by failing to turn over his medical records, part of the EMS report, and "3 to 4 pictures" of Young in the hospital. (Dckt. #10 at 6). For the reasons that follow, a *Brady* claim premised on this evidence is procedurally defaulted.

"A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to procedural default." *White v. U.S.*, 8 F.4th 547, 554 (7th Cir. 2021). This is because a state prisoner "must give the state an opportunity to correct alleged violations of federal rights by fairly presenting his claim through a full round of state court review," either on direct appeal or in post-conviction proceedings. *Lee v. Mlodzik*, 170 F.4th 1065, 1073 (7th Cir. 2026); *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). In order to do so, a state prisoner "must present his claim at each level of the state court system before seeking federal relief." *Jannke v. Gierach*, 159 F.4th 517, 521 (7th Cir. 2025). A habeas petitioner who has exhausted his state court remedies "without properly asserting his federal claim at each level of state court review has

procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2024); *Jannke*, 159 F.4th at 521.

Although Isom raised allegations about *Brady* violations related to each piece of evidence in his post-trial motion, (*see* Dckt. #16-4 at 3–5), and his PLA, (*see generally* Dckt. #16-8), he failed to raise allegations about the EMS report or the additional pictures of Young either on direct appeal or in his postconviction petition, (*see generally* Dckt. ##16-1; 16-6; 16-7). Therefore, Isom's *Brady* claim pertaining to these two pieces of evidence is procedurally defaulted.

While Isom *did* raise allegations about a *Brady* violation related to suppression of his medical records in his postconviction petition, (*see* Dckt. ##16-6; 16-7), that claim is still procedurally defaulted because of Isom's failure to raise it on direct appeal.   A claim may be procedurally defaulted based on the independent and adequate state ground doctrine "when a state court [has] declined to address a prisoner's federal claims because the prisoner [has] failed to meet a state procedural requirement."   *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). In its order dismissing Isom's postconviction petition, the state trial court rejected Isom's *Brady* claim concerning the alleged suppression of his medical records, in part because he failed to raise it on direct appeal and thus "waived" the issue "for purposes of post-conviction review."   (Dckt. #16-7 at 3).   Waiver is an independent and adequate state procedural ground, *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009), so Isom's *Brady* claim pertaining to his medical records is procedurally defaulted.

A petitioner who has procedurally defaulted federal habeas relief may excuse the default if he can either (1) "demonstrate both cause for and prejudice stemming from that default" or (2) "establish that the denial of relief will result in a miscarriage of justice"—in other words, that he

is actually innocent. *Lewis*, 390 F.3d at 1025–26. Isom has not even attempted to demonstrate or establish either here, other than repeating in his reply that with the allegedly suppressed evidence, "[he] could [have] proven his innocence." (Dckt. #19 at 2).

Regardless, the record would not provide a basis to excuse Isom's procedural default. As to cause and prejudice, the fact that Isom raised his *Brady* claim in his earlier post-trial motion defeats the argument that "some type of external impediment prevented the petitioner from presenting his federal claim to the state courts" at later stages of review. *Lewis*, 390 F.3d at 1026. And as to actual innocence, Isom's insistence that he acted in self-defense when he pressed his thumb into Young's eye fails to demonstrate that "in light of . . . new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Arnold v. Richardson*, 14 F.4th 780, 782 (7th Cir. 2021).

Accordingly, because the Court finds that Isom's *Brady* claim is inexcusably procedurally defaulted, the Court declines to reach the merits of this claim.

### C. Notice of Appeal Rights and Certificate of Appealability

Petitioner is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed.R.App.P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If he wishes the Court to reconsider its judgment, however, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed.R.Civ.P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed.R.Civ.P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed.R.App.P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed

within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed.R.Civ.P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed.R.Civ.P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed.R.App.P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. A certificate of appealability is appropriate only when "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner cannot make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree, with this Court's resolution of petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. §2253(c)(2)); *Slack*, 529 U.S. at 484.

**CONCLUSION**

For the foregoing reasons, petitioner's habeas corpus petition, (Dckt. #10), is denied. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter judgment in favor of respondent and against petitioner.

**DATE: July 7, 2026**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**

10